UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YELLOWSTONE CAPITAL, LLC,

        Plaintiff,

-against-

UNITED SPIRIT, INC. d/b/a INTERNATIONAL SPORTS CENTER, ISC GYMNASTICS AND CHEERLEADING, LLC d/ba/a INTERNATIONAL SPORTS CENTER, CHEERSPORT, CORP., VARSITY SPIRIT, LLC, JEFFREY L. FOLKES a/k/a JEFFREY L. FOWLKES, KEVIN T. BRUBAKER, JENNIFER BRUBAKER JULIA E. O'BRIEN, and CHARLES D. NICHOLS,

        Defendants.

Civ. Act. No. 14-cv-9292 (VB)

**FIRST AMENDED COMPLAINT**

Plaintiff, Yellowstone Capital, LLC ("Plaintiff" or "YCL"), by its attorneys, Law Offices of Gabriel Mendelberg, P.C., for its First Amended Complaint, alleges as follows:

## NATURE OF ACTION

1. By this action, Plaintiff seeks to enforce a New York judgment based on Defendants' systematic and fraudulent transfer and looting of the assets of a judgment-debtor who received substantial monetary advances from Plaintiff secured by those assets, including its accounts receivable. Defendants' scheme to render the debtor inactive, insolvent and judgment proof is not too well hidden. Two active corporations, which are commonly controlled and are affiliated with the debtor, have simply assumed the debtor's operations, and, along with the individual defendants, received the benefit of fraudulent transfers. The individual defendants, who own and/or control the corporate defendants, orchestrated this scheme for the sole purpose of depriving Plaintiff of its contractual rights, evading the New York judgment, and rendering Plaintiff's priority position under the UCC a nullity.

## PARTIES

2. Plaintiff YCL is, and at all times relevant has been, a limited liability company duly organized and existing under and by virtue of the laws of the State of New York, with an office located at 160 Pearl Street, 5th Floor, New York, New York 10005.

3. Upon information and belief, defendant United Spirit, Inc. ("USI"), d/b/a International Sports Center, was, until January 7, 2015, a corporation duly organized and existing under and by virtue of the laws of the State of North Carolina, with principal offices and operations located at 11011 Monroe Road, Suite C, Matthews, North Carolina 28105.

4. Upon information and belief, defendant ISC Gymnastics and Cheerleading, LLC ("ISC"), also d/b/a International Sports Center, is a corporation organized and existing under and by virtue of the laws of the State of North Carolina, with principal offices and operations located at 11011 Monroe Road, Suite C, Matthews, North Carolina 28105.

5. Upon information and belief, defendant Cheersport, Corp. ("Cheersport") is a corporation organized and existing under and by virtue of the laws of the State of North Carolina, with principal offices and operations located at 11011 Monroe Road, Suite C, Matthews, North Carolina 28105.

6. Upon information and belief, defendant Varsity Spirit LLC ("Varsity") is a limited liability company organized and existing under and by virtue of the laws of the State of Tennessee, with offices located at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929, and purports to be the successor-in-interest to Cheersport by virtue of a series of purported mergers of Cheersport into affiliated parent and subsidiary corporations.[1]

---

[1] Defendants USI, ISC, and Cheersport/Varsity are collectively referred to herein as the "Corporate Defendants."

2

7. Upon information and belief, defendant Jeffrey L. Folkes, a/k/a Jeffrey L. Fowlkes ("Folkes"), is an individual domiciled in the State of North Carolina, with an address at 11011 Monroe Road, Suite C, Matthews, North Carolina 28105.

8. Upon information and belief, defendant Kevin T. Brubaker ("K. Brubaker") is an individual domiciled in the State of North Carolina, with an address at 2235 Winthrop Ridge Road, Charlotte, North Carolina 28277.

9. Upon information and belief, defendant Jennifer Brubaker ("J. Brubaker") is an individual domiciled in the State of South Carolina, with an address at 1092 Wedgewood Lane, Indian Land, South Carolina 29707.

10. Upon information and belief, defendant Julia E. O'Brien ("O'Brien") is an individual domiciled in the State of North Carolina, with an address at 225 Coach Ridge Trail, Matthews, North Carolina 28015.

11. Upon information and belief, defendant Charles D. Nichols ("Nichols") is an individual domiciled in the State of North Carolina, with an address at 9105 Treehaven Drive, Charlotte, North Carolina 28270.[2]

## JURISDICTION AND VENUE

12. Jurisdiction and venue are proper in Westchester County because Defendants transacted business in New York, and/or the choses of action herein arose in New York.

13. In addition, Defendants agreed to submit to the jurisdiction of any court in the State of New York including without limitation, Westchester County, by contracts to which they are directly or indirectly bound.

---

[2] Defendants Folks, K. Brubaker, J. Brubaker, O'Brien and Nichols are collectively referred to herein as the "Individual Defendants."

## STATEMENT OF FACTS

### Inter-Relationship of the Parties

14. YCL is in the business of purchasing future accounts receivable from retail and wholesale merchants and provides cash advances in furtherance of such purchases on a secured basis.

15. The Individual Defendants -- most notably Folkes -- operate a gymnasium and training facility that provides gymnastics and cheerleading instruction and operates and hosts gymnastics and cheerleading clinics, competitions, events, and camps for a fee (the "Business"), primarily through the trade name and retail merchant enterprise called "International Sports Center."

16. At all times relevant hereto, the Corporate Defendants have done business as, *inter alia*, "International Sports Center" through the same or substantially the same group of controlling persons, including, but not limited to, the Individual Defendants.

17. The Individual Defendants nominally and interchangeably utilize the Corporate Defendants to operate "International Sports Center" primarily if not exclusively at the same commercial premises, located at 11011 Monroe Road, Suite C, Matthews, North Carolina 28105.

18. During the period in question, the Individual Defendants have been and/or have represented themselves to be owners, directors, officers, managers, and agents of the Corporate Defendants.

19. The Articles of Organization of USI identify each of the Individual Defendants as directors of USI, identify defendant K. Brubaker as USI's registered agent, and identify non-party Thomas J. Falish ("Falish") as the incorporator. Defendant Folkes is listed as President. In annual reports, defendant K. Brubaker is identified as "Vice-President" and defendant O'Brien is

identified as "Secretary" of USI. USI's principal offices are listed as 11011 Monroe Road, Suite C, Matthews, North Carolina 28105.

20. Similarly filed public documents, including so-called "merger" documents, and private contracts, identify defendant Folkes also as "President" of Cheersport and of Cheersport's so-called successor entity, "Spirit Holding, Inc.," a corporation which, in turn, purportedly merged into defendant Varsity Spirit, idendify defendant Nichols as "Secretary" of Cheersport, and list Cheersport's principal office also as 11011 Monroe Road, Suite C, Matthews, North Carolina 28105. Folkes is also identified as a director, and Falish as the incorporator, of Cheersport.

21. The Articles of Incorporation of ISC are signed by defendant O'Brien as "President" and by defendant J. Brubaker as "Owner." Upon information and belief, each of the Individual Defendants is a director of ISC. Defendant O'Brien is identified as registered agent. ISC's principal offices and mailing address are also listed as 11011 Monroe Road, Suite C, Matthews, North Carolina 28105.

### The Secured Merchant Agreements and New York Judgment

22. YCL has been providing funding in New York to businesses operated and controlled by the Individual Defendants, including the Corporate Defendants, for some time, as memorialized by a series of secured Merchant Agreements that contain a New York choice of law and venue provision and cross-collateral and pledge obligations (collectively, the "Secured Merchant Agreements").

23. By way of example, pursuant to a Merchant Cash Advance Agreement dated September 23, 2009 (the "Cheersport Agreement"), Cheersport received cash advances totaling $100,000.00 from non-party Strategic Funding Source ("SFS"), which, at that time, was an

5

Case 3:15-cv-00254-DSC    Document 27    Filed 02/16/15    Page 5 of 16

affiliate of YCL, secured by the present and future assets of Cheersport, including its accounts receivable. The Cheersport Agreement was brokered and facilitated in New York by YCL.

24. Folkes and K. Brubaker negotiated the Cheersport Agreement and personally guaranteed Cheersport's obligations thereunder. Folkes signed the Cheersport Agreement as "owner" and CEO and K. Brubaker signed the Cheersport Agreement as "President" of Cheersport. Both represented themselves to be, and signed the Cheerport Agreement as, directors of Cheersport.

25. The Cheersport Agreement was entered into in New York, is expressly governed by New York law, and contains a jurisdiction and venue provision requiring the parties to address disputes in New York.

26. Contemporaneous with the Cheersport Agreement, defendants Folkes and K. Brubaker entered into a Cross Collateral Addendum (the "Addendum") in which they represented that Cheersport and USI were "affiliated," shared the same address, and "hereby pledge to assume any and all liability of the other in the event that either one fails to perform or defaults under the terms and conditions of their individual SFS Merchant Agreements."

27. In the Addendum, Folkes and K. Brubaker further agreed that "the Merchants/Affiliates individually hereby grant cross collateral to each other and all the affiliated establishments listed and shall accept the transfer of SFS balances from each other at the sole discretion of Strategic Funding Source, Inc."

28. Folkes signed the Addendum as Owner and CEO and K. Brubaker signed as President of Cheersport.

29. Likewise, pursuant to a Secured Merchant Agreement dated August 3, 2011, and corresponding Security Agreement and personal guarantees, YCL agreed to purchase certain

6

receivables from Cheersport in the amount of $150,000.00 on a secured basis (the "Second Cheersport Agreement"). The Second Cheersport Agreement, Security Agreement and guarantees are signed by defendant Folkes as "CEO" and by defendant K. Brubaker as "President" of Cheersport. Both represent themselves to be owners of Cheersport. The Second Cheersport Agreement was signed and performed in New York and contains a New York choice of law, jurisdiction and venue provision.

30. On or about March 18, 2014, USI and YCL entered into another secured merchant agreement (the "USI Agreement") whereby YCL agreed to buy all rights to USI's future accounts-receivable, having a face value of $189,770.00, for a purchase price of $125,000.00, to be paid in advance of the transfer of the receivables or cash proceeds thereof.

31. Pursuant to the USI Agreement, and consistent with prior Secured Merchant Agreements, USI was required to pay YCL fifteen percent (15%) of its daily accounts-receivable (the "Specified Percentage") via automated "split-fund" payment from USI's credit-card processor – Integrity Payment Solutions ("IPS") – until the purchased amount of receivables – $189,770.00 – was paid in full. The USI Agreement provided that in the event USI used a credit card processor other than the IPS exclusively, USI was in default of the Agreement.

32. USI was also required to exclusively use one specifically designated bank account approved by YCL (the "Account") into which USI agreed to deposit all of its receipts, and from which YCL was to conduct its ACH debits of the Specified Percentage of said receipts.

33. Defendant Folkes guaranteed USI's performance under the USI Agreement and represented that he was an "owner" of USI in that regard.

34. As contemplated and permitted by the USI Agreement, YCL filed a financing statement in accordance with Article 9 of the Uniform Commercial Code, giving YCL a

7

perfected security-interest in all of USI's now or hereinafter owned and acquired tangible and intangible assets, including accounts-receivable, inventory, equipment, cash on hand, and goodwill.

35. The USI Agreement also provides that YCL may recover its attorneys' fees incurred for having to enforce its rights under the USI Agreement.

36. Section 4.5 of the USI Agreement further provides:

> *This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of YCL* which consent may be withheld in YCL's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to any applicable principles of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation performance or breach hereof shall, if YCL so elects, be instituted in any court sitting in New York State (the 'Acceptable Forums'). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. [Emphasis added]

37. Subsequent to entering into the USI Agreement, having received the advances, USI only transferred $66,549.15 to YCL, thereby leaving a balance due and owing of $156,640.29 under the Agreement. USI further breached the Agreement by failing to utilize IPS as its exclusive credit-card processing service for receiving payment on accounts receivable, and by failing to provide YCL with access to the Account or to allow YCL to debit payments from the Account.

38. On or about May 9, 2014, YCL obtained a judgment against USI and Folkes, jointly and severally, in an action captioned *Yellowstone Capital LLC v. United Spirit, Inc. et al.*, in the Supreme Court of the State of New York, Westchester County, Index No: 57923/14, in the amount of $157,620.60 (the "Judgment"). To date, no part of the Judgment has been satisfied.

### Defendants' Scheme to Defraud YCL

39. Prior to and since the issuance of the Judgment, Defendants have implemented a scheme to deprive render USI insolvent and dormant, thereby depriving YCL of its rights under the USI Agreement and the Judgment, and to render YCL's secured interest in USI's present and future assets, including its accounts receivable, a nullity.

40. Upon information and belief, the Individual Defendants each control the activities of the Corporate Defendants, and have ceased operating through USI, and through the Account, instead shifting the operations and assets of USI, including its accounts receivable, to the remaining Corporate Defendants, the Individual Defendants, and other entities and individuals, without receiving adequate consideration in return and without YCL's consent.

41. Upon information and belief, on or about May 27, 2014, the Individual Defendants, acting in concernt, and officially through defendants J. Brubaker and O'Brien, formed ISC – believed to be an abbreviation of "International Sports Center" -- the same business name formerly used by USI, in North Carolina, and thereafter utilized ISC to operate the very same Business, in the same premises, formerly operated and utilized by USI.

42. Upon information and belief, ISC continues to operate and maintain a website, accessible at www.internationalsportscenter.com, offering the same or substantially similar Business services and facilities to consumers as those previously provided by USI, and the very same trade name, "International Sports Center." ISC is clearly a successor entity to USI in all material respects and was formed by the Individual Defendants precisely for the purpose of evading the Judgment.

43. Likewise, upon information and belief, the operations, Business opportunities, receivables and customers of USI have also been, and are being, funneled to, and operated through, Cheersport, out of the same location previously utilized by USI. Cheersport maintains a website, accessible at www.cheersport.net, in which Cheersport offers the same or substantially similar Business services as those previously provided by USI out of the same location.

44. Upon information and belief, voided checks and other documentation arising out YCL's funding of USI and Cheerport reflect the same address for both companies – 11011 Monroe Road, Suite C, Matthews NC 28105 and the comingling of advances and debits by Cheersport and USI. Upon information and belief, at all times relevant hereto, through the control of the Individual Defendants, Cheersport and USI have maintained commonly controlled bank accounts at BB&T, which has a national presence, including in New York.

45. Without the consent of YCL, USI, controlled by each of the Individual Defendants, has transferred tangible and intangible assets, including the accounts receivable over which YCL holds a perfected security interest, to ISC and to Cheersport.

46. USI and Folkes have failed and refused to account for the receivables and other assets which secure USI's debt to YCL. There are, in effect, substantial sums of money and assets legally belonging to YCL which have simply vanished.

47. The foregoing has been, and continues to be, undertaken by the Defendants with the full knowledge of the Judgment and of USI's obligations, and YCL's secured position, under the Secured Agreements, for the specific purpose of hindering YCL's rights thereunder and of rendering USI insolvent and unable to satisfy the Judgment.

48. Upon information and belief, on or about January 7, 2015, the Secretary of State of North Carolina issued a Certificate of Administrative Dissolution of USI, for failure to file an

annual report. Upon information and belief, the Individual Defendants intentionally caused this dissolution to occur as part of their scheme to render USI insolvent and unable to satisfy the Judgment.

## COUNT I
### (Breach of Contract by the Corporate Defendants)

49. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect, as if same were more fully set forth herein.

50. ISC and Cheersport are each successors and/or assigns of USI with respect to the obligations owed to YCL pursuant to the Secured Merchant Agreements.

51. Cheersport pledged to honor the liabilities of USI to YCL, and pledged its assets to secure the obligations of USI to YCL, by contract.

52. USI has breached the USI Agreement and failed to satisfy the Judgment.

53. By reason of the foregoing, ISC and Cheersport are jointly and severally liable to YCL in an amount to be determined at trial, but believed to equal the amount of the Judgment plus attorneys' fees, interest and costs.

## COUNT II
### (Unjust Enrichment as against all Defendants)

54. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect, as if same were more fully set forth at length herein.

55. Defendants have collectively been unjustly enriched in the sum of at least $156,640.29 as a result of Defendants wrongfully withholding the Specified Percentage.

56. Upon information and belief, Defendants have been unjustly enriched by diverting the Specified Percentage to themselves and to others without the consent of YCL and without YCL receiving the full benefit of its bargain with the Defendants.

57. The foregoing unjust enrichment has been at YCL's expense.

58. By reason of their unjust enrichment, Defendants are liable to YCL in an amount to be determined at trial.

## COUNT III
### (Conversion as against all Defendants)

59. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect as if same were more fully set forth herein.

60. Upon information and belief, Defendants collectively converted and continue to convert the Specified Percentage of USI's accounts-receivable, which belongs to YCL, and which Defendants should be paying over to YCL.

61. The Specified Percentage belongs to YCL pursuant to the USI Agreement, as YCL tendered full and fair compensation for same, in addition to which YCL has a perfected security interest in the accounts-receivable of Defendant United Spirit and a judgment against same.

62. Based on Defendants' conversion of funds, YCL has suffered damages in an amount to be determined at trial, but believed to be at least $156,640.29, plus interest from June 30, 2014, attorneys' fees and costs, plus punitive damages as determined by the Court.

## COUNT IV
### (Fraudulent Conveyances as against all Defendants)

63. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect, as if same were more fully set forth herein.

64. Upon information and belief, prior to the execution of the USI Agreement and through and until the present, USI and Folkes were in possession of assets, including without limitation, equity interests, real property, trade name(s), websites, accounts-receivable, inventory, business infrastructure, client lists and goodwill, belonging to YCL.

65. Upon information and belief, on or about May 27, 2014, and thereafter, Defendants, without consideration exchanged in return for such transfers, were the recipients of USI's assets, thus rendering USI insolvent and YCL unable to enforce the Judgment and obtain the benefits of the USI Agreement.

66. By reason of the foregoing, YCL has suffered damages in an amount to be determined at trial, but believed to exceed $156,640.29, plus interest from June 30, 2014, attorneys' fees and costs, plus punitive damages as determined by the Court

## COUNT V
### (Tortious Interference with Contract as against all Defendants)

67. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect, as if same were more fully set forth herein.

68. At all times relevant hereto, upon information and belief, Defendants each knew of the terms of the USI Agreement and YCL's priority secured position under the UCC and otherwise over the assets of USI.

69. Defendants have purposefully caused USI to become a dissolved and insolvent, in whole or in part, so as to render USI unable to meet its obligations under the USI Agreement or the Judgment, while at the same time, continuing to operate the business of USI through commonly controlled entities such as ISC and Cheersport.

70. YCL has thus been damaged in an amount to be determined at trial, but believed to be at least $156,640.29, plus interest from June 30, 2014, attorneys' fees and costs, plus punitive damages as determined by the Court.

## COUNT VI
### (Piercing the Corporate Veil: Individual Defendants)

71. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect, as if same were more fully set forth herein.

72. Upon information and belief, the Individual Defendants are, or at all times relevant hereto were, owners, directors and/or officers of USI, and wholly controlled the operations of the Corporate Defendants, which they have operated interchangeably.

73. Upon information and belief, the Individual Defendants have exercised complete domination over the Corporate Defendants, over the transactions at issue, and over the operations of the Corporate Defendants.

74. The Individual Defendants have comingled assets, misappropriated funds, and purposefully undercapitalized USI.

75. The Individual Defendants have abused the privilege of doing business in the corporate form, thereby perpetrating a wrong that resulted in injury to YCL.

76. By reason of the forgoing, YCL has been damaged in an amount to be determined at trial, but believed to equal the amount of the Judgment plus attorneys' fees, interest and costs.

## COUNT VII
### (Breach of Fiduciary Duty by the Defendants)

77. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect, as if same were more fully set forth herein.

78. The Individual Defendants are, or during relevant times hereto, were, owners, directors and officers of USI.

79. USI has become insolvent by reason of the Defendants' purposeful conduct.

80. Upon USI's insolvency, fiduciary duties to USI's creditors, including YCL, devolved upon the Individual Defendants. These fiduciary duties include, among other, a fiduciary duty to preserve USI's assets, a fiduciary duty to account for USI's assets and a fiduciary duty to refrain from self-dealing.

81. The Individual Defendants breached this fiduciary duty by transferring assets and Business opportunities to other entities and persons, doing so without receiving adequate consideration therefor, and failing to account to YCL.

82. YCL has thereby been damaged in an amount to be determined at trial, but believed to equal the amount of the Judgment plus attorneys' fees, interest and costs.

## COUNT VIII
### (Corporate Defendants as Alter Egos of USI)

83. YCL repeats and re-alleges each and every allegation contained in paragraphs "1" through "48" above with the same force and effect, as if same were more fully set forth herein.

84. ISC and Cheersport share common ownership, control and supervision with USI.

85. ISC and Cheersport share the same or substantially similar operations with those of USI.

86. ISC and Cheersport share common office/operational space with USI.

87. ISC and Cheersport share a common pool of assets with USI.

88. The Corporate Defendants are essentially a single, indistinguishable economic entity.

89. By reason of the foregoing, the Corporate Defendants are jointly and severally liable to YCL in an amount to be determined at trial, but believed to equal the amount of the Judgment plus attorneys' fees, interest and costs.

## JURY TRIAL DEMANDED

90. Plaintiff demands a trial by jury on all issues triable by a jury in this matter.

## PRAYER FOR RELIEF

91. WHEREFORE, Plaintiff prays for the following relief:

    (a)    Monetary damages as set forth above;

(b) Costs and expenses of this action; and,

(c) Such other and further relief in its favor as is just and proper.

Dated: New York, New York
February 16, 2015

        Respectfully,

        LAW OFFICES OF GABRIEL MENDELBERG, P.C.
        *Attorneys for Plaintiff*
        75 Maiden Lane, Suite 603
        New York, New York 10038
        (212) 965-9800

        By:_____
        Gabriel Mendelberg (GM 7482)